UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| JIANYUAN INTERNATIONAL CO., LTD., SHANDONG YUWANG ECOLOGICAL FOOD INDUSTRY CO., LTD., LINYI YUWANG VEGETABLE PROTEIN CO., LTD., YANTAI ORIENTAL PROTEIN TECH CO., LTD., and JIUJIANG TIANTAI FOOD CO., LTD., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Court No. 24-00184 |

## COMPLAINT

Plaintiffs Jianyuan International Co., Ltd., Shandong Yuwang Ecological Food Industry Co., Ltd., Linyi Yuwang Vegetable Protein Co., Ltd., Yantai Oriental Protein Tech Co., Ltd., and Jiujiang Tiantai Food Co., Ltd., by and through undersigned counsel, hereby file this Complaint and state as follows:

### ADMINISTRATIVE DECISION TO BE REVIEWED

1. Plaintiffs seek review of the final affirmative critical circumstances determination of the U.S. International Trade Commission ("ITC") in its antidumping and countervailing duty ("AD/CVD") investigation of pea protein from the People's Republic of China ("China"), which was published as *Certain Pea Protein from China*, 89 Fed. Reg. 67,671 (Aug. 21, 2024); *Certain Pea Protein from China,* Inv. Nos. 701-TA-692 & 731-TA-1628 (Final), USITC Pub. 5529 (Aug. 2024). This ITC determination became effective upon the U.S. Department of Commerce's ("Commerce") publication of AD/CVD Orders on *Certain Pea Protein from the*

*People's Republic of China: Antidumping and Countervailing Duty Orders*, 89 Fed. Reg. 58,390 (Aug. 26, 2024) ("*Orders*").

## JURISDICTION

2.     This action is filed pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(II), 1516a(a)(2)(B)(i), and 28 U.S.C. § 1581(c). This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

## STANDING OF PLAINTIFFS

3.     Plaintiffs participated in the ITC's investigation of pea protein from China that resulted in the challenged *Final Determination*, submitting questionnaire responses and briefs, and providing public testimony, *inter alia*. Plaintiffs are thereby interested parties as described in Section 771(9)(A) of the Tariff Act of 1930, as amended (the "Act"), 19 U.S.C. § 1677(9)(A), and thus have standing to bring this action under 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516(d).

## TIMELINESS OF THE ACTION

4.     Section 1516a(a)(2)(A) of the Act requires that, in actions challenging final ITC determinations, the Summons must be filed within 30 days of the date of publication in the Federal Register of the *Orders*. 19 U.S.C. § 1516a(a)(2)(A)(i). Commerce published the *Orders* on August 26, 2024.

5.     This action was commenced within 30 days of the date of publication of the *Orders* through the filing of a Summons on September 25, 2024. This Complaint is being filed on October 25, 2024, within the time allowed for the filing of a Complaint by statute and this Court's Rules. The Summons and the Complaint have both therefore been timely filed in accordance with 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 263(c), and pursuant to Rules 3(a)(2) and 6(a) of this Court.

**BACKGROUND**

6.     On July 12, 2023, PURIS Proteins, LLC ("Petitioner") filed a petition with the ITC and Commerce claiming, in part, that the domestic pea protein industry was being materially injured by reason of pea protein from China.

7.     On July 18, 2023, based on the allegations in the petition, the ITC instituted an AD/CVD investigation of pea protein from China. *See Certain Pea Protein from the People's Republic of China; Institution of Antidumping and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations*, 88 Fed. Reg. 45,924 (July 18, 2023).

8.     Plaintiffs fully participated in the preliminary phase of the ITC's AD/CVD investigation of pea protein from China by submitting questionnaire responses, participating in the Conference on August 2, 2023, and submitting a post-conference brief on August 7, 2023.

9.     The ITC in August 2023 voted affirmatively to find a reasonable indication that the domestic pea protein industry was materially injured by reason of imports of pea protein from China. This determination became effective in September 2023. *Certain Pea Protein from China*, 88 Fed. Reg. 60,495 (Sept. 1, 2023); *Certain Pea Protein from China*, Inv. Nos. 701-TA-692 & 731-TA-1628 (Preliminary), USITC Pub. 5457 (Sept. 2023).

10.    In Commerce's AD/CVD investigations of pea protein from China, Petitioner filed a critical circumstances allegation with respect to imports of pea protein.

11.    In December 2023, Commerce published its preliminary determination in its CVD investigation of pea protein from China, preliminarily assigning CVD rates between 15.09% and 342.53%. *Certain Pea Protein from the People's Republic of China: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Critical Circumstances Determination, and alignment of Final Determination With Final Antidumping Duty*

*Determination*, 88 Fed. Reg. 87,403, 87,405 (Dec. 18, 2023) ("*Preliminary CVD Determination*"). Commerce preliminary made an affirmative critical circumstances determination for all Chinese exporters. *Id*. at 87,404.

12.     In February 2024, Commerce published its preliminary determination in its ADD investigation of pea protein from China, preliminarily assigning ADD rates between 122.19% and 280.31%. *Certain Pea Protein from the People's Republic of China: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Affirmative Determination of Critical Circumstances, Postponement of Final Determination, and Extension of Provisional Measures*, 89 Fed. Reg. 10,038 (Feb. 13, 2024) ("*Preliminary ADD Determination*"). Commerce made an affirmative preliminary critical circumstances determination for all Chinese exporters. *Id*. at 10,039.

13.     The ITC in March 2024 scheduled the final phase of its AD/CVD investigation of pea protein from China. *Certain Pea Protein from the People's Republic of China; Scheduling of the Final Phase of Countervailing Duty and Antidumping Duty Investigations,* 89 Fed. Reg. 15,895 (Mar. 5, 2024).

14.     Plaintiffs fully participated in the final phase of the ITC's investigation of pea protein from China by, *inter alia*: submitting questionnaire responses; submitting a prehearing brief on June 18, 2024; providing testimony at the ITC Hearing on June 25, 2024; submitting a posthearing brief on July 2, 2024; and submitting final comments on July 23, 2024.

15.     In their written submissions and in Hearing testimony, Plaintiffs demonstrated that there was no basis in the record for the ITC to make an affirmative critical circumstances determination. In particular, Plaintiffs demonstrated: (1) the ITC should, consistent with its

4

practice, use a six month comparison period and not the five month period requested by Petitioner; (2) "the timing and volume of the imports" did not "indicat{e} that the remedial effect of the {ADD/CVD} order will be seriously undermined," 19 U.S.C. §§ 1671d(b)(4)(A)(ii), 1673d(b)(4)(A)(ii), because the increase between periods did not approximate the very high import volume increases required by longstanding agency practice; (3) there had not been "a rapid increase in inventories of the imports" that would "indicat{e} that the remedial effect of the {ADD/CVD} order will be seriously undermined," 19 U.S.C. §§ 1671d(b)(4)(A)(ii), 1673d(b)(4)(A)(ii), as the inventory data did not support such a finding; and (4) there was not any other record evidence, such as average unit value data, that would support an affirmative critical circumstances finding.

14.     At the public Hearing, Commissioner Karpel asked a general question about "other relevant factors" supporting an affirmative critical circumstances decision. Neither she nor Commissioner Kearns asked any other questions concerning critical circumstances, nor did they provide any indication at the Hearing that they intended to invent a new analytical framework for ITC critical circumstances determinations in this investigation.

15.     Commerce published its final ADD and CVD determinations on July 5, 2024, assigning final ADD rates between 122.19% and 280.31% and final CVD rates between 15.15% and 355.89% – and finalizing its critical circumstances determinations for all Chinese exporters. *Certain Pea Protein from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Critical Circumstances Determination*, 89 Fed. Reg. 55,559, 55,559-60 (July 5, 2024); *Certain Pea Protein from the People's Republic of China: Final Affirmative Countervailing Duty and Final Affirmative Critical Circumstances Determination*, 89 Fed. Reg. 55,557, 55,557-58 (July 5, 2024).

16. The ITC in late July 2024 voted affirmatively to find both material injury and critical circumstances. This vote was splintered: Commissioner Johanson voted for threat-only, which would make AD/CVD prospective only and preclude an affirmative finding of critical circumstances; and Commissioner Schmidtlein voted affirmative for present material injury but negative for critical circumstances. *Certain Pea Protein from China,* USITC Pub. 5529, at 48-65. The ITC final determination published in August 2024. *Certain Pea Protein from China*, 89 Fed. Reg. 67,671; *Certain Pea Protein from China,* USITC Pub. 5529.

17. The two-Commissioner majority used five month comparison periods and employed a new analytical framework in assessing critical circumstances: "while the percentage increase in post-petition imports is less than in some other recent investigations, that increase was from a very large base." *Certain Pea Protein from China*, USITC Pub. 5529 at 44-45. The majority was "unpersuaded" by Plaintiffs' demonstration that agency practice precluded an affirmative critical circumstances finding through reliance on an ITC report that was not available at the time of briefing. *Id*. at 44 n.257 (citing *Mattresses from Bosnia and Herzegovina, Bulgaria, Burma, Italy, Philippines, Poland, Slovenia, and Taiwan*, Inv. Nos. 731-TA-1629-31, 1633, 1636-38, 1640 (Final), USITC Pub. 5520 (June 2024)). The majority further justified finding critical circumstances based on factors beyond those specified in the statute and emphasized factors that the statute mandates should be considered for consideration of overall injury:

> The increase in the volume of imports in the post-petition period did not replace decreasing inventories. . . .
>
> With respect to pricing, although prices of subject imports did not markedly decrease in the post-petition period, we observe that **subject imports undersold** the domestic like product at large margins of underselling throughout the POI, averaging 38.6 percent. . . .
>
> In addition to the foregoing, the Commission views the timing of the increase in subject imports from China in the post-petition period as instructive . . . .

6

> Subject imports, which maintained a dominant and increasing share of the U.S. market throughout the POI while **universally underselling** domestic product at large margins of underselling, increased . . . in the post-petition period, and occurred in the context of increasing U.S. inventories of subject imports. . . . {T}he domestic industry . . . throughout the POI as it **lost sales and sustained downward pricing pressure** on account of universal underselling by subject imports at large margins of underselling. Accordingly, we determine that critical circumstances exist with respect to subject imports from China.

*Id*. at 45-47 (emphases added).

18. In her dissent on critical circumstances, Commissioner Schmidtlein could not find a basis for critical circumstances using volume, inventory, and price data, and challenged the majority's findings. *Id*. at 64-65. She identified flawed logic in the majority determination and considered both five and six month comparison periods as follows:

> In my view, **neither set of increases demonstrate a massive and rapid increase that would likely undermine the remedial effect of the orders. Indeed, importers' U.S. inventory levels at the end of 2023 were lower than each of the prior years of the POI, which does not suggest that importers were stockpiling imports** prior to the imposition of duties to be used to undermine the orders. There also is no evidence of significant changes in pricing patterns that might suggest the imports entering in the post-petition period were intended to circumvent a potential order. The average quarterly prices of subject imports from China generally started declining prior to the petitions being filed, with no apparent acceleration of this trend after the petitions were filed, and many pricing products actually show an increase in the price of subject imports in the last quarter of 2023. . . .
>
> The statute and legislative history make clear that the magnitude of the increases in both import volume and inventories are important to the Commission's analysis (*e.g*., "massively increasing imports," "rapid increase in inventories"). I find that **the increases present on this record do not satisfy this standard**. The majority focuses on the total volume of subject imports in the post-petition period, rather than the increase, and emphasizes that the imports were starting from a large base. **Following the majority's logic, if subject imports start from a large base, there does not necessarily need to be an increase in import volume in the post-petition period at all, let alone a substantial or "massive" increase as contemplated by the statute and legislative history.**
>
> Based on the foregoing, I find that imports of HPC pea protein from China subject to Commerce's affirmative critical circumstances determinations are not likely to undermine seriously the redial effect of the antidumping and countervailing duty

orders. Consequently, I make a negative determination with respect to critical circumstances.

*Id.* (emphases added) (footnotes omitted).

19. Commerce in August 2024 published the *Orders*, 89 Fed. Reg. 68,390. As a result, imports of pea protein exported by Plaintiffs became subject to ADD at rates as high as 280.31% for entries of pea protein commencing 90 days before publication of the *ADD Preliminary Determination* and CVD rates as high as 350% commencing 90 days before publication of the *CVD Preliminary Determination*.

## STATEMENT OF CLAIMS

### COUNT ONE (Unlawful Critical Circumstances Determination)

20. Paragraphs 1 to 19 are adopted and incorporated herein by reference.

21. The ITC unlawfully found critical circumstances, as its analysis was legally flawed in a number of respects. These errors include improperly: using a five month comparison period, when agency practice required that it use a six month comparison period; focusing on the existing volumes rather than the increases that occurred post-petition, as emphasized in Commissioner Schmidtlein's dissent; failing to meaningfully address Plaintiffs' arguments and evidence with respect to inventories; improperly relying on agency precedent that was not available to Plaintiffs at the time of briefing; and bootstrapping statutory factors for overall injury into the critical circumstances analysis.

22. The ITC's finding of critical circumstances is not supported by substantial evidence on the record, is arbitrary and capricious, and is otherwise contrary to law, constituting an impermissible and unexplained deviation from agency practice.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court:

(a)  hold that the ITC's critical circumstances finding in its AD/CVD investigation of pea protein from China is unsupported by substantial evidence and otherwise not in accordance with law;

(b)  remand the ITC's final critical circumstances finding in its AD/CVD investigation of pea protein from China with instructions for ITC to issue a new determination that is consistent with this Court's decision; and

(c)  provide such other and further relief as the Court deems just and proper.

    Respectfully submitted,

    GRUNFELD, DESIDERIO, LEBOWITZ
    SILVERMAN & KLESTADT LLP

    */s/ Jordan C. Kahn*
    Jordan C. Kahn
    Ned H. Marshak
    Andrew T. Schutz

    *Counsel to Plaintiffs*
    *Yantai Oriental Protein Tech Co., Ltd.,*
    *Yantai Zhongzhen Trading Co., Ltd.,*
    *Jiujiang Tiantai Food Co., Ltd., and Yantai*
    *Yiyuan Bioengineering Co., Ltd.*

Dated: October 25, 2024

# CERTIFICATE OF SERVICE

I certify that copies of the Complaint, filed on October 25, 2024, in case number 24-00184 was served by certified mail, return receipt requested, on October 25, 2024, upon each of the interested parties listed below.

Attorney-In-Charge
International Trade Field Office Commercial Litigation Branch
**U.S. Department of Justice**
26 Federal Plaza, Room 346
New York, New York 10278

Jeanne E. Davidson, Esq.
Civil Division
Commercial Litigation Branch
**U.S. Department of Justice**
1100 L Street, NW
Washington, DC 20530

The Honorable Lisa R. Barton
Secretary
**U.S. International Trade Commission**
500 E Street, SW
Washington, DC 20436

Stephen J. Orava, Esq.
**King & Spalding LLP**
1700 Pennsylvania Avenue, NW
Washington, DC 20006

Stephanie Hartmann, Esq.
**Wilmer Cutler Pickering Hale & Dorr LLP**
2100 Pennsylvania Avenue, NW
Washington, DC 20037

Jonathan T. Stoel
**Hogan Lovells US LLP**
555 Thirteenth Street, NW
Washington, DC 20004

/s/ Jordan C. Kahn
Jordan C. Kahn
GRUNFELD, DESIDERIO, LEBOWITZ
SILVERMAN & KLESTADT LLP
*Counsel to Plaintiffs*

12990170_1